number 24-10641. Council, whenever you are ready. May it please the court, my name is Joel Perwin. I'm here with Elena Futubowicz-Tovitz. For the plaintiff, I would respectfully submit that for two reasons, the facts of this case are more compelling than they were in the Kinsdale decision issued April 18th. And I say this because A, the court, in adopting the magistrate report recommendation, excluded whole categories of evidence that were admissible, not dispositive, but were admissible and should have been considered. And two, the court applied an outdated standard for assessing bad faith under Florida law and did not acknowledge, and in some cases, a few cases, contradicted the standard that currently exists. First, these categories of evidence that were excluded were any consideration or reference to GEICO's policies and the expert testimony that was offered on the ground that it was general and was dismissed out of hand. The GEICO policies in question are privileged and have been redacted. And I submit to the court that they are specific. The rationale was that they may exceed the illegal standard and they're not necessarily coincident with it. However, that is simply a factor for the fact finder to consider. And as this court held in the Bannon case explicitly, they are part of the totality of circumstances. So the exclusion of that. But if there's no connection between whether the enhanced duties under the policy are what is reasonable under the law, without that sort of connection, how can a jury find that to be reasonable as part of the totality of what a duty is under Florida law? And that really is a legal question, it seems to me, more than a factual one. I think it is. And I think the answer, respectfully, is that the defendant has the right to tell the jury and suggest to the jury that these standards exceed what the court's going to instruct you about. And you can take them into consideration. If you find that they're commensurate, then their failure to comply is a relevant consideration among many that may be probative of the issue of bad faith. But at the least, the fact that- But how's the jury to evaluate that? In other words, what if the policy, for whatever reason, said, in every circumstance, a offer must be made the very day in which the accident is reported without qualification? We all know under Florida law, that's not the law. That's not the law, and that's not what we would advocate, and that's never what we would advocate. No, but what if that was the policy? You would agree with me that that would not be relevant for a jury in determining the circumstances of what Florida law is under bad faith, right? Yes, I do, and that's why we would never advocate it, and the jury would never hear about it. Right, but here we have something like that. Obviously, it's not as extreme as the example I gave you, but we have enhanced duties that are under the policy, and certainly there might be a breach of contract action between the policyholder and Geico. But how do these enhanced duties apply to whether the actual duties under Florida law were violated? Well, there's no determination that they were enhanced duties. They were argued to be enhanced. The magistrate judge concluded that because they might have been greater duties, without really analyzing what they were, because they might have been greater duties, theoretically, they can't be considered at all. I guess my question is, is the only, for the fact finder to be able to see it as relevant, doesn't the fact finder have to know that those are commensurate with the duties? In other words, isn't there like a connection missing between here's what a contract says, here's what the duties of Florida law, and there's nothing connecting those two things? Well, the duties that the contract prescribes are in most cases commensurate with Florida law, and the jury will be told what Florida law is, and should be told what the duties are, and can understand and appreciate and make a factual finding that they are analogous, that they're applicable, and that they should be considered. But the magistrate judge or the district judge in ratifying the report recommendation said, I'm not going to consider it at all. It's not a relevant consideration. And that was an error of law. Can I ask you about, you mentioned the expert testimony. Can I ask you about that? Yeah, that's right where I was going. Good. And we're on the same page. So in your brief, you mentioned this part of the expert's testimony, that quote, Geico quote, violated its duty of good faith and fair dealing regarding, I'll use the plaintiff's. The plaintiff's claim against insured by improperly delaying its tender of its bodily injury liability limits of $10,000 until April 30. And from that, you quote a docket entry 25 at paragraph 66. Right? No. I'm sorry. Yes, but we also referenced a whole lot more than the expert said, and we identified it. They were discussed at DE 25 at 15-16. They referenced provisions of the depot, which were 25-11 at 15, 40-43, 65-70, and 76. I have listed no less than 12 specific points that attorney Louis Jack made in those pages. Incidentally, he was the same expert in the Kinsey case. And his testimony was described in part in Kinsey and is analogous to exactly what he said here. And I can go through. I just read to you directly from your brief, from pages 43 and 44. I think it's 42 or 43, the portion of there. Which also cited all of the others. With regard to that, I just want to focus on the portion that I just mentioned there. And if there's any specific one that you have differently from what I'm talking about, let me know. But with regard to that, the key there of his testimony is that by improperly delaying its tender of the bodily injury limits until April 30. But does that comport with the record? Because as I understand the record, and again, correct me if I'm wrong, but on the March 22 letter, and this was to Ms. Martinez and to everybody, all seven of the injured, GEICO has specifically said, we are tendering the limits to all seven parties. And we're asking for a conference for everyone to attend so that we can distribute all of this. Which is a global tender. Right. Which is patently inadequate. And that's one of the distinctions. How is that patently inadequate under MESA? Because MESA, I believe, but certainly many other cases, debunk the prior precept, which the magistrate accepted that if there are more than one claimant, it is not relevant to a demonstration of bad faith that one of them may have significantly greater injuries. Here's what we said in MESA. Although the plaintiff contends that the insurer's who immediately tendered the $10,000 per person liability limits to MESA is evidence of bad faith, because there were multiple claimants, the insurer's decision to pursue a global settlement was consistent with its duty of good faith under Florida law. And it is not unusual for settlement negotiations to last several months. Because there were multiple claimants and the much more significant injuries of one of them was not managed. How is that not the facts here? At least, I agree with you that certainly at the end of the day, your client was the most injured. But at the point where this happened about 30 days in, what Geico, as I understand, knew was that there were at least two people who were airlifted to the hospital and were told, the investigator was told, had significant injuries, at least two. And certainly, seven people had some sort of injuries. I mean, this is a multiple claimant case. And there's at least two people that had to be airlifted to the hospital. And that's because Geico didn't investigate the injuries for a substantial period of time, a huge period of time. In fact, it didn't investigate the accident for a huge period of time. Didn't even talk to the people involved in it for a significant period of time. In Mesa, the tender was made. Global tender. The tender was made, similar to here, about 17 days in. Here, I think we're at 32. Global tender. Right. And the argument is, and the cases support it, that if you've got a significantly disproportionate injury, and their adjuster said that her injury, based on the evidence they should have found earlier, was more than all the other injuries put together. That's certainly true at the back end. But knowing 32 days in, or 30 days in, when they ultimately said, hey, this is serious. We have multiple claimants. Let's put 20,000 aside. And that happened, I think, it's about March 19 or so. At that point, what they knew, or what I understand, is that there was at least two injured people, and seven people who were injured in this accident. How is this not, this doesn't seem to be like a one injury case, and then everyone else sort of had minor injuries. Because they didn't check. They did not check. She's in the hospital. She suffered identifiable injuries. The other person airlifted has suffered identifiable injuries. Their adjuster looked back at what was available to them at that time, when they didn't investigate this. They didn't even talk to the claimants. Didn't they wait? Wasn't one of the reasons was that they were waiting for the police report, and after they received the police report, then they saw who the victims were. And after they notified, they found out who the victims were, then they notified the victims, and they reached out to the victims. Yes, and it took them 10 days after the police report was completed to even order it. Well, they didn't receive the police report. The police report was dated February 12th, but they didn't receive it until March 5th. That's right, February 12th to March 5th. And they have, according to the experts and according to their fiduciary obligation, they have to obtain the police report. And according to their manual, they have to obtain the police report when it's ready, so they can continue to make an evaluation of liability and damages. And they didn't do that. There was a month of time. Mr. Perlman, you've reserved five minutes of your time. Thank you so much. No, don't apologize at all. Thank you so much. OK, thank you.  Counsel. Hi, good morning, Your Honors. There are no disputed facts in this record. The only issue in this case is whether all of the facts taken together, in the light most favorable to the plaintiff, are sufficient from which a reasonable jury could conclude. May I ask you a question before you proceed? Does the new decision that came out from this court, Kinsale, does it have any application to this case? I do not believe it does it in any way, Your Honor, because this is a multiple claimant case, as Your Honors were just pointing out. And this case is squarely in line with Mesa versus Clarendon. And also the Aldana case, which in that case, reversed summary judgment. In fact, I believe supports our case, in this instance, under these facts. Because unlike the Kinsale case, which was a single claimant case, and the issue was. Kinsale does, it seems to have some relevance. I mean, you may be right that it ultimately is distinguishable on the multiple claimant issue. But it does seem to suggest that even, part of your defense has been, hey, we didn't know even liability at this point. There was some significant evidence, including the police report, which indicated there was someone different who was liable other than our insured. We didn't even know the scope of what the injuries were. And so we needed at least some time to be able to look at all of this. Kinsale seems to suggest that even where there is some possible legal hurdles, and I think the dissent in that case pretty brilliantly lays out what those legal hurdles are. Still, the majority said that, despite those legal hurdles, that the duty is owed. And so that at least takes out that argument, it seems to me. Am I having that wrong? Do I have that wrong? Well, your honor, I agree in the sense that I think that GEICO, in this case, fulfilled its obligations under Kinsale. I mean, liability wasn't clear in this case. It was a very strange accident where the vehicle made a U-turn, was hit, and then pushed back into the same lane. I know, but what Kinsale seems to suggest is there was some real hiccups in liability there. It's unclear the fight happened on the property. It's unclear that anyone knew that the fight was happening. It's possible another property owner was there. It seemed to have some similar hiccups. Yes, your honor, but the timeframe is completely different. And here in this case, my point is that it doesn't apply in the sense that, in this case, GEICO fulfilled any obligation it would have had under Kinsale, because GEICO made a very quick determination that, in spite of the liability issue, and in spite of the fact that liability wasn't clear, it was going to globalize the policy limits. I mean, you do agree that it was, assuming March 22nd is sort of the trigger here, there was about a 32-day delay between when GEICO was notified of the accident and when they tendered a global offer to the seven. Which I believe is almost identical to the timeframe in the VIA case, in which this court affirmed the summary judgment. In that case, the timeframe was almost identical. There was about a 30-day lapse between the reporting of the accident and the global tender, and about two and a half months between the reporting and when the global settlement conference took place, which is exactly what we have here. So. But what are the reasons? I mean, I think that there's some distinctions. Number one, why did it take so long, if it's in the record, to obtain the police report? And yes, you had multiple injured parties, but at the end of the day, there were two. And that's not to diminish the significance of what happened to those two individuals, but it wasn't like everyone who was involved in the accident, even at early on, was in the same category in terms of medical necessity. Well, they weren't, may not have been in the same category, but Your Honor, I would respectfully disagree that they weren't injured. There was significant injuries to some of the other parties. The Morales sisters, one of them had a fractured clavicle. The other one had scarring over her body. This is an 18, 17, 18-year-old girl who, that could be. I'm not, again, I'm not diminishing the significance of the injuries of others, but for at least the two who were airlifted, that suggests that their injuries were significant enough to put GEICO on notice that they might be in a different category in terms of the damages requested. I wouldn't disagree with that, but I would disagree with the implication of that, because I think that it is common practice, and in fact, not even common practice, but required by the case law under Ferenas and the other cases to attempt to settle all of the claims. And it is common that even when you have two parties who might be significantly more injured than the other parties, you can go to a global settlement conference and have, you know, Mejia, who was also airlifted, and Martinez could have agreed to take 9,000 each, and then 500 go to each of the other people in order to get protection for the insured. And that's what the insurance companies are required to do. Can I ask you a question? Because I think one of the issues, sort of the underlying issue, is what does clear liability mean? Yes, Your Honor. And there really isn't a case on point in Florida, under Florida law, that talks about what does clear liability mean. Yes, Your Honor. Would this be an appropriate case to certify to the Florida Supreme Court, to ask, why don't you tell us what clear liability means under Florida law? Your Honor, I would love to see a case certified on that issue to the Supreme Court, and I think we could very much use clarification on that issue, but I don't think it's necessary in this case, because I think regardless of the answer to that question, this decision should be affirmed. And so, unfortunately, I don't believe it's necessary. I'd love to see the Supreme Court answer that case, and frankly, I wish they would have happened in Kinsdale. But I don't think it's necessary here, because in this case, in spite of the liability question, which, liability was never determined. I mean, this didn't even go to a jury brace. We really don't even know what liability ultimately was for this accident. But GEICO treated it as its policy limits were available, fully available to settle this case very quickly, and in my opinion, after this loss. And so I don't think it's necessary. But I do think it's important to point out that Florida law requires that the first effort made by an insurance company in this scenario is to settle all of the claims, to provide full protection to the insurer. Because yes, even if this one claim is significantly more than, worth more than the others, which it may or may not have been. I mean, Mejia's claim settled for $10,000. We don't know exactly how sufficient her claim was. Yeah, but your opposing counsel, I think, very convincingly says there is a ticking time bomb here. Now, there may have been more than one ticking time bomb, but there was a ticking time bomb here. Well, Your Honor, in the Valley case, there was one fatality, and the other claims were all non-fatality. And that may be what makes this case different, but they're not wrong to say that, in addition to protecting your client, and what I mean by that is the insured here, but in addition to protecting the insured by settling everything, you also need to protect them from a significant excess judgment, which was certain to come here to maybe more than one person. Absolutely, and the question is, what is the method that Florida law prescribes in order to do that, right? And what the Mesa case rejects is that you are required to tender a per-person limit to one individual to the exclusion of the others. Mesa squarely rejects that. It's a published 11th Circuit opinion, and the Aldana case that the plaintiffs rely on cites that portion of Mesa in a positive light. The Aldana's distinguishable because the Aldana went on for months. It went on for over a year. I mean, they reset the global over six months at six different times. It went on over a year, and Aldana eventually said, look, you can't just keep beating your head against the wall, so to speak. This isn't working. That isn't what happened here at all. This was, the global was set one time, rescheduled one time at the request of Mejia's attorney. It took place within two and a half months of when the loss was reported, and just like in the Mesa case, and just like in Valley and in Montana's, there was no reason for GEICO to believe that this was not an appropriate avenue to settle these cases to protect its insurer because they weren't put on notice of any reason to think that what they were doing wasn't going to provide this protection. So even if there is a ticking time bomb in the sense that there's all these claims, they're proactively making these steps. 30 days in, they get this letter out saying we're offering everything. They get the conference scheduled, and very importantly, Mr. Olin, the attorney for Ms. Martinez, he agrees when he appears and sends his letter of rep to come to the settlement conference. That is what's critically important about this case. This would be a completely different case if an attorney, either him or the attorney for Mejia or anybody else had said, hey, listen, this conference is too far out. My client's very injured. Send me the money now. That's a different case. Or if he said, hey, that conference is way too long. I'm not gonna make it. Or just even didn't give a reason and just said, I'm not gonna be there, right? But the onus is on you, right? I mean, is it in the insurance company that's supposed to be proactive in addressing those issues? And my point is that they were. They set the global settlement conference and said, hey, we're gonna get a conference together. We're gonna get everybody together. We're gonna settle all these cases. And they had absolutely no reason to believe that that wasn't the best avenue to provide the maximum protection to their insured. If Mr. Olin had said, hey, send me the money ahead of time or I'm not gonna come here, well, then maybe Geico would have thought, okay, well, this is too far out or he needs the money now or there's something else going on. But when he agrees to appear at the conference, and he in fact did appear at the conference, right? Geico has no reason to believe leading up to that that this isn't the avenue to settle the case. And that is exactly what the Mesa case talks about. This is really the gravamen of the Mesa case is that the defense attorney who was retained by the insurance company in that case, who happens to be Mr. Jack, was working to globally settle all these claims and was under the belief that all of these claims were working towards a global resolution. And then unbeknownst to him, one of the plaintiff's attorneys filed a lawsuit in the interim and said, hey, I'm not gonna participate anymore. And that's effectively what happened here, right? Geico was under the belief that everybody was participating in this globally. They set a date, they were in communication with everybody. Everybody was saying, hey, we're gonna be there. There's no reason to put them on alert that this isn't going to lead to all of these claims being resolved in favor of their insurance. No, I'm sorry, you're saying, so just because you scheduled a settlement conference, it was reasonable for Geico to assume that a settlement would be achieved? It was reasonable for Geico to assume that the best path to provide the maximum protection to its insurer to settle all the claims that were being presented was at that settlement conference, as opposed to tendering proactively a full per-person limit, which would potentially exhaust the coverage available to the insurer for these other claims, without a demand, without any request or requirement from the plaintiff's attorney, without any indication that he wasn't going to appear at the global settlement conference, that he wasn't willing to participate in the global settlement conference, that he wasn't willing to share in those policy limits with the other injured claimants, then yes, in the absence of all of those factors, it was appropriate, and the case law, the Mesa versus Clarendon case, the Farinas case, the Marsh case, all stand for that proposition, Aldana as well. Does the record indicate when the offer from State Farm was accepted by the plaintiff? It was right around March 19th or 20th. That's when it was extended? Yes. My question is different. I don't know the answer, honestly, Your Honor. I haven't found it, and I wondered if you knew or could point me to anything in the record that said. Is that fact relevant? It may be, if he took some time to accept it. I mean, he have to, as I understand what the testimony from Mr. Jack was, was that, and relayed from the plaintiff, that it was only after Mr. Olin was on the case that she took the advice to accept the offer, because she had been run-represented, I think until about April 16th is when Mr. Olin comes on the case. Yes, Your Honor. And so, at some point after that, it had to be at some point after that, that he advised her to accept the State Farm offer. Does that, is that relevant at all? How do we take that into the totality? Yes, Your Honor. I mean, frankly, I don't know the answer as to exactly what date it was finally accepted, but I agree that it's relevant, because it shows that, you know, if it wasn't accepted until after Mr. Olin was involved, well, then you're in a very, very narrow window. It seems to be the inference from Mr. Jack, right? No, and I agree completely. I think it's a great point, Your Honor. And I think that if that's the case, and it appears to be the case, from Mr. Jack and what you're saying, that then you're talking about a narrow period of the 16th or 17th of April until the 30th, when the global takes place, you know? So I think that is very relevant, that, I mean, it just shows that within that, there's, again, really goes back to what I was just saying, is that there's no indication that there was any reason for GEICO to tender its per-person limits to Ms. Martinez ahead of this Global Settlement Conference individually, right? I mean, because if they're not gonna be accepted until later anyways, when she has a lawyer, and you have, you know, it's only until the 30th, and again, I've gotta go back to the fact that Mr. Olin said he was gonna be at the Global Settlement Conference and was at the Global Settlement Conference, and never gave any indication that he wasn't gonna participate in a global settlement, and that is exactly like the Mesa versus Clarence case, and it really is, and I've gotta point out that, I mean, we've got, the case law on this is just sort of uniformly in GEICO's favor in this case. The Montanez case. But would it be different if Mr. Olin shows up at the Settlement Conference, the Global Settlement Conference, and the meeting goes south and says, you know what, this is not gonna work, and this is not appropriate for my client and the injuries that they've sustained? I mean, in that case, the facts may have been slightly different. I think the facts are better for us in this case, because he appeared, we tendered the full per-person limit to him as he wanted at that conference, because the other claimants who were, you know, a lot of these girls were friends, and they said, well, hey, you know, Ms. Mejia and Ms. Martinez can take the full 10 each. We'll forgo our claims. And so at that point, GEICO tendered to him, and it's important that he didn't even reject it at that point. It wasn't until September, right, that he actually rejects those limits. So to say, well, you know, GEICO acted in bad faith because they didn't tender ahead of April 30th, when he didn't even really reject it until September, it doesn't make a whole lot of sense. So I think the facts as they exist are actually better for GEICO than what your Honor's suggesting. I'm running out of time, but I want to address very briefly the expert situation that was discussed on the appellant's argument. The Aries versus Progressive case, the published opinion was discussed in the magistrate's report and recommendation, deals with this exact issue and discusses the fact that there was an expert in that case who provided a favorable opinion to the plaintiff. And that's not sufficient to overcome summary judgment. I mean, it could be in some scenarios, right, but it doesn't, just because they have a favorable opinion from an expert doesn't mean there's a genuine issue of material fact and summary judgment can't be granted. And so I just have to point out that both the report and the recommendation and the district court's order adopting it clearly stated that they considered all of the facts including the expert's opinion, including the manuals. They considered all of the facts in the light most favorable to the plaintiff and still found in favor of GEICO. Thank you, Counsel. Thank you, Your Honors. Real quick, page 36 of our brief, the Aldana Court, multiple injured parties say notwithstanding, there was knowledge that the injury was very, very bad and there was an obligation, a good faith obligation. Pages 36 to 37. Here, they didn't even investigate the injury until it was 36 days after they learned of the accident. What about opposing counsel's comments or arguments that Ms. Martinez's attorney should have been a little bit more proactive and that his presence at the settlement conference was absent any indication that he would not participate in good faith, let's say, was part of the reason why GEICO did not understand this to be an individual separate claim that they had to resolve and that a global settlement indeed was realistic? A, what the plaintiff does is not relevant to the inquiry. We cited the cases. It's what the defendant does. Two, Olin was there. Three, Olin said, I can't accept a global tender. I want to talk to my clients and that did not obviate the requirement of the insurer to make an individual offer in light of its constructive knowledge of the injury. The Aldana case at page 36 says the fact that there are other claimants is not dispositive and their adjuster says that her injuries were more than all the others put together and if they hadn't waited 36 days, they would have found that out and they didn't even interview the car's occupants, the other car, all the car's occupants, until 35 days after they learned of the accident. That's unheard of and all of those are, and as I said, there was a total of two months, a period of two weeks, March 5 to March 18, period of one month, March 26 to April 30, period of two weeks, April 4 to April 16, two months in which there was zero investigation of liability and damages. The court said that they diligently sought out the police report. That's at least questionable, they waited 10 days. What do we make of the fact that despite what you're saying and I think the record supports what you're saying, even at 32 days, so meaning even before they had a full investigation done of the injuries, they tendered the limits to a global settlement. Two things, one, the question of when there was a tender is only one factor for the jury to consider, it's not, and two, it was a global tender. Yeah, but this is a delay in settlement claim. I mean, that's the essence of the claim is they delayed in settling and if the settlement was 32 days, what does it matter if they didn't run down all the injuries by then? The essence of the claim is that they should have made an individual offer to her in light of what they constructively knew. Massive injuries, more than Vera Juster said all of the others put together amounted to, even the one who was sent to the hospital, they would have found that out almost instantly given the amount of that they did. They did create a reserve almost immediately in light of her prospective injuries. They could have found that out and they could have made and should have made, according to the case law, an individual offer at that time. A global offer is not sufficient. That's what the more recent cases say. And respectfully, and I never got to this, the magistrate and the district judge did not consider the current lexicon by which these issues are discussed. The urgency of a very difficult case. The exposure that that exposes the insured to. And all the other factors that I've listed here, and that incidentally were listed in the other case, I've blanked on the name. All of them were listed and properly stated in the other case are ignored here. And some of them are absolutely contradicted such as this multiple claimant issue. So to the extent that there was no diligence, and the whole gravamen of this standard that was articulated is diligence. Recognizing the immediacy, recognizing the threat to the insured through a diligent investigation. There's evidence that they were focused solely upon their own defenses initially. There's evidence that they delayed indefensibly in considering both the injuries and liability. They gave no consideration to what happened after the offer was rejected, which is at least probative of the injury. They excluded the expert altogether. The specific expert altogether and applied the wrong standard. That's got to go back. Thank you. Thank you, counsel.